IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DARLENE ROSE HEWKIN,

        Plaintiff,

v.

MICHAEL J. ASTRUE,

        Defendant.

Civil No. 6:10-cv-01434-TC

**FINDINGS AND RECOMMENDATION**

COFFIN, Magistrate Judge:

Plaintiff Darlene Hewkin ("Hewkin") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's

1 - FINDINGS AND RECOMMENDATION

decision should be affirmed.

## BACKGROUND

Born in 1963 (Tr. 144)[1], Ms. Hewkin reports a high school education. Tr. 181. She alleges disability beginning October 30, 2005 (Tr. 144, 147) due to osteoarthritis, depression, fibromyalgia, attention-deficit disorder, lipoma,[2] carpal tunnel syndrome, and high blood pressure. Tr. 174. The Commissioner denied her applications initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on July 28, 2009. Tr. 28-90. The ALJ found Ms. Hewkin not disabled on January 29, 2010. Tr. 12-23. The Appeals Council accepted additional evidence into the record, but denied review of the matter (Tr. 1-4), and Ms. Hewkin now appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509;

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer June 28, 2011 (Docket #11).

[2] Lipoma is a "noncancerous growth of fatty tissue." Medline, Nat'l Inst. Health, http://www.nlm.nih.gov/medlineplus/ency/imagepages/1209.html (last visited May 18, 2012).

404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); Yuckert, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g); 416.966; 416.920(g).

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Ms. Hewkin's degenerative joint disease of the right hip and depressive disorder "severe" at step two in the sequential proceedings. Tr. 14. The ALJ found that these impairments did not meet or equal a listed disorder at step three, and evaluated Ms. Hewkin's RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . except the claimant can lift 10 pounds occasionally and less than 10 pounds frequently; she can stand and walk for one to one and three-fourths hours of an eight hour workday; she has no limitation regarding sitting in an eight hour workday; and she needs a cane for walking, especially on uneven surfaces. She can occasionally bend, stoop, climb (but not ladders, ropes, or scaffolds), crouch, and crawl. She can do simple and detailed tasks involving frequent, but not constant, contact with the public. Tr. 16.

This RFC precluded performance of Ms. Hewkin's past relevant work. Tr. 21. The ALJ found Ms. Hewkin to be a "younger" individual under the Commissioner's regulations, and found transferability of jobs skills immaterial. Tr. 22. Drawing upon a vocational expert's testimony, the ALJ found that Ms. Hewkin could perform work in the national economy at step five in the sequential proceedings. Tr. 22-23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court, however, may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)), *see also* Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 US 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Ms. Hewkin alleges that the ALJ erroneously evaluated (1) her credibility; (2) the lay witness testimony; (3) her RFC; and (4) her ability to perform work in the national economy.[3] She also asserts that the ALJ failed to develop the record and, finally, that the ALJ should have found her disabled. In the alternative, she asks this court to remand the matter for further proceedings.

**I.    Credibility**

Ms. Hewkin asserts that the ALJ failed to follow the Commissioner's administrative ruling pertaining to her credibility. Pl.'s Opening Br. 21-26.

///

---

[3]Ms. Hewkin argues that the ALJ did not follow the Commissioner's administrative ruling regarding her past relevant work as an assembler at step four in the sequential proceedings. Pl.'s Opening Br. 32 (citing Tr. 19). The ALJ made no finding that Ms. Hewkin could perform any past relevant work, and instead found, in Ms. Hewkin's favor, that she could not perform past work at step four in the sequential proceedings. Tr. 21. Ms. Hewkin's submission on the matter is not based upon the record and will not be further addressed.

5 - FINDINGS AND RECOMMENDATION

A.   **Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883.

B.   **Analysis**

The ALJ's credibility findings cited Ms. Hewkin's activities of daily living and medical record. Tr. 17-19. The ALJ also noted that Ms. Hewkin offered contradictory reports regarding the extent of her dog breeding business. Tr. 19.

Ms. Hewkin now asserts that the ALJ erroneously cited her activities of daily living, the medical record pertaining to her alleged mental impairments, and her failure to follow treatment. Pl.'s Opening Br. 22-26.

### 1. Activities of Daily Living

The ALJ cited Ms. Hewkin's ability to perform self care and household chores, drive, shop, and use self-propelled and riding lawnmowers. Tr. 18. The ALJ also noted Ms. Hewkin's testimony that she cared for eight to ten dogs, and engaged in a dog breeding business. Tr. 18-19.

The ALJ may cite a claimant's activities of daily living. Smolen, 80 F.3d at 1284. Ms. Hewkin now asserts that the ALJ citation to these activities was erroneous because they were erratically performed. Pl.'s Opening Br. 25. Her citation to the Commissioner's regulations pertains to the evidence establishing disability, in general. 20 C.F.R. § 404.1512(a). An ALJ must consider that a claimant's symptoms may fluctuate, allowing greater activities during periods of remission. Reddick, 157 F.3d at 724. However, the reviewing court must also defer to an ALJ's interpretation of a claimant's activities, even where an interpretation more favorable to the claimant may arise. Rollins v. Massinari, 261 F.3d 853, 857 (9th Cir. 2001). Here, Ms. Hewkin offers no citation to the record that her condition waxes and wanes, and that her activities of daily living fluctuate accordingly. Therefore, this court defers to the ALJ's finding that Ms. Hewkin performed the activities indicated, and that these activities are inconsistent with an allegation of total disability. The ALJ's findings on the matter should be affirmed.

### 2. Medical Treatment Record

The ALJ discussed Ms. Hewkin's medical treatment record throughout her findings. Tr. 17-19.

Ms. Hewkin asserts that the ALJ erroneously focused upon "nonexistent" "inconsistencies." Pl.'s Opening Br. 22. This argument is unclear; Ms. Hewkin specifically points to the ALJ's finding that Ms. Hewkin received conservative medical treatment, with "relatively effective" use of medications. Id. (citing Tr. 18).

The ALJ's credibility findings may cite a claimant's medical record in conjunction with other findings, Robbins, 466 F.3d at 883, and may cite the utilization of conservative treatment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). Here, the ALJ noted that Ms. Hewkin was prescribed medications for her alleged blood pressure and ADHD impairments, and that the record indicates these medications effectively controlled her symptoms. Tr. 18. The ALJ specifically cited Ms. Hewkin's use of various antidepressants and ADHD medications, pain medication, and muscle relaxants. Id. Ms. Hewkin does not directly address this finding, asserting instead that she continued to experience symptoms despite treatment. Pl.'s Opening Br. 23.

The record shows that Ms. Hewkin's physician noted that her Adderall and blood pressure medications appeared effective. Tr. 293-295. The ALJ's findings regarding Ms. Hewkin's conservative treatment is based upon the record. Ms. Hewkin misstates the issue relating to use of conservative treatment, and the ALJ's findings on the matter should be affirmed.

### 3. Failure to Follow Treatment

The ALJ noted that Ms. Hewkin "has not been entirely compliant in following prescribed treatment plans, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." Tr. 18. The ALJ cited a December 2005 treatment note which stated that Ms. Hewkin was not using recommended heat and massage for her right hip pain. Tr. 18 (citing Tr. 381). The ALJ also cited Ms. Hewkin's testimony that she did not engage in

8 - FINDINGS AND RECOMMENDATION

physical therapy. Tr. 18.

Ms. Hewkin asserts that the ALJ "curiously left out Dr. Kelly's note that the claimant will try to re-start" heat, massage, and physical therapy, and that "there is nothing in the record that suggests the claimant does not utilize heat and massage therapy," or was non compliant in taking her medications. Pl.'s Opening Br. 24. This submission misconstrues the record: the record clearly shows, as indicated, that Ms. Hewkin did not utilize recommended heat and massage therapy. Tr. 381. Further, as the ALJ noted, Ms. Hewkin directly testified that she did not obtain physical therapy, although the record does not show such therapy was prescribed. Tr. 48.

The ALJ's credibility analysis may cite a claimant's failure to follow recommended treatment without explanation. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012); Smolen, 80 F.3d at 1284. The ALJ's finding regarding Ms. Hewkin's failure to follow the treatment recommendations discussed above is based upon the record, and should be affirmed.

## II.    Lay Witness Testimony

Ms. Hewkin asserts that the ALJ erroneously evaluated testimony submitted by her father, Eldon Mardock, and other unidentified lay witnesses. Pl.'s Opening Br. 29.

### A.    Lay Testimony Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 416.913(d); Molina, 674 F.3d at 1114 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must provide germane reasons for rejecting lay testimony. Molina, 674 F.3d at 1114 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). However, the ALJ is not required to address each witness "on an individualized witness-by-witness basis," and may reject lay testimony predicated upon reports of a claimant properly found not credible. Molina, 674 F.3d at

1114 (citing Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009)).

**B.     Analysis**

Mr. Mardock testified at Ms. Hewkin's July 28, 2009, hearing before the ALJ. Tr. 71-78. Mr. Mardock stated that Ms. Hewkin prepared snacks and meals, and only performed limited farm or heavy work. Id. This included yard work and "seven hours on a riding [lawn] mower." Tr. 73.

Mr. Mardock also described Ms. Hewkin's activities with her miniature long-haired dauschund dogs, which numbered "somewhere around 22, 20, 22." Id. This including feeding and cleaning up after them. Id. Mr. Mardock stated that Ms. Hewkin he offered unspecified assistance in cleaning the kennels or carrying forty pound bags of dog food. Tr. 72. He also stated that Ms. Hewkin sold the dogs for $250 to $2,200. Id.

In response to questions from Ms. Hewkin's counsel, Mr. Mardock also stated that Ms. Hewkin limps due to right hip pain, can walk two blocks before stopping, and has weak hands which cause her to drop things. Tr. 73. He stated that Ms. Hewkin's pain keeps her in bed all day, except to use the restroom. Tr. 74. She must make multiple trips carrying groceries into the house (Tr. 75), and functions at twenty-five percent of a normal person's pace. Tr. 76.

The ALJ discussed Mr. Mardock's testimony, specifically noting Mr. Mardock's testimony regarding Ms. Hewkin's dog business. Tr. 19. The ALJ also discussed Mr. Mardock's testimony addressing Ms. Hewkin's daily activities, and concluded that the limitations Mr. Mardock described were inconsistent with Ms. Hewkin's activity caring for the dogs. Tr. 21. Finally, the ALJ noted Mr. Mardock's written statement, and commented that Mr. Mardock is not "knowledgeable in the medical or vocational fields and it appears that much of what he said at the hearing and in the written

statement was designed to help his daughter obtain . . . benefits." Tr. 21. The concluded that Mr. Mardock was "generally but not fully credible." Id.

The ALJ may reject lay testimony that is predicated upon, or mirrors, reports of a claimant found not credible. Molina, 674 F.3d at 1114 (citing Valentine, 574 F.3d at 694). Mr. Mardock's description of Ms. Hewkin's limitations repeats allegations made by Ms. Hewkin properly rejected by the ALJ. Infra, 5-8. The ALJ therefore adequately rejected Mr. Mardock's testimony on the same matters.

The ALJ's statement that Mr. Mardock lacks expertise misconstrues the purpose of lay testimony; lay testimony is valuable simply because the lay witness has an opportunity to observe the claimant. Dodrill, 12 F.3d at 919. However, the reviewing court may affirm the ALJ's conclusions where the ALJ offered an invalid reason for disbelieving testimony, but also provided valid reasons supported by the record. Molina, 674 F.3d at 1115. The court therefore declines to disturb the ALJ's conclusion.

In summary, the ALJ's decision to partially, but not fully, rely upon Mr. Mardock's testimony in assessing Ms. Hewkin's RFC should be affirmed.

### III. Residual Functional Capacity Assessment

Ms. Hewkin claims the ALJ erroneously evaluated her RFC under the Commissioner's Administrative Rulings. Pl.'s Opening Br. 30-31.

#### A. Residual Functional Capacity: Standards

The Commissioner's regulations direct that the RFC is "based on all relevant evidence" in the record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Social Security Ruling 96-8p, entitled

11 - FINDINGS AND RECOMMENDATION

"Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," further defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC. SSR 96-8p, 1996 WL 374184 at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exceptional and nonexertional capacity. Id. at *5-6.

### B. Analysis

#### 1. Regular and Continuing Work

Ms. Hewkin argues that the ALJ failed to make findings of fact regarding her capability to perform regular and continuing work. Pl.'s Opening Br. 31. The claimant's RFC, by definition, represents work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. Ms. Hewkin articulates no specific and identifiable error in the ALJ's RFC analysis; further, the ALJ specifically stated that her RFC included Ms. Hewkin's abiltiy to perform work activities on a "sustained basis." Tr. 13. This argument therefore fails.

#### 2. Lay Witness Testimony

Ms. Hewkin's argument under SSR 96-8p also points again to the lay testimony, without specifying further error. Pl.'s Opening Br. 31. As explained above, Ms. Hewkin fails to establish reversible error regarding the ALJ's assessment of Mr. Mardock's's testimony, including limitations stemming from her alleged ADHD, lipomatosis, chronic fatigue, and hand pain. Ms. Hewkin cannot now rely upon the Commissioner's Administrative Ruling as a back door to again attack the ALJ's analysis of the lay witness testimony, and this court rejects her request that this it reevaluate her

testimony under SSR 96-8p.

## IV. The ALJ's Step Five Findings

Ms. Hewkin asserts that the ALJ should have found her disabled at step five in the Commissioner's disability analysis. Pl.'s Opening Br. 33.

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001). Because Ms. Hewkin fails to show that the ALJ erroneously omitted work-related limitations, the ALJ's step five findings should be affirmed.

## V. The ALJ's Duty to Develop the Record

Finally, Ms. Hewkin asserts that the ALJ failed to develop the record throughout the analysis discussed above. Pl.'s Opening Br. 26-28. She specifically asserts that the ALJ should have developed the record rather than found her not disabled due to her alleged ADHD, "lipomatosis," chronic fatigue, and hand pain. Pl.'s Opening Br. 26.

The ALJ has a duty to develop the record when the claimant's onset date is ambiguous, Armstrong v. Comm'r, 160 F.3d 587, 590 (9th Cir. 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination. 20 C.F.R. §§ 404.1513(e); 416.913(e); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

A finding of non-disability does not establish an inadequate record; if it did, no case could

end. The record here is neither ambiguous nor inadequate. Ms. Hewkin specifically asserts that examining psychologist Stephen Meharg, Ph.D., noted ADHD symptoms, but, "these are rather ubiquitous symptoms of many different forms of psychiatric and somatic conditions and thus lack sufficient specificity to support an ADHD diagnosis." Pl.'s Opening Br. 27. Ms. Hewkin's proposition that symptoms relating to her alleged ADHD impairment may now relate to another unspecified condition, and, as such, require development of the record, is speculative. This argument therefore fails.

Ms. Hewkin also points to her own testimony, arguing that her statements regarding her hand pain and lipomatosis require development of the record. Pl.'s Opening Br. 28. Ms. Hewkin's testimony and credibility is discussed above, and will not be discussed again.

Further, Ms. Hewkin bears the burden of providing evidence establishing disability. 20 C.F.R. §§ 404.1512(a); 416.912(a); Tackett, 180 F.3d at 1098. Ms. Hewkin had opportunity to submit additional materials to the record earlier in the administrative process and did not do so.

For all of these reasons, Ms. Hewkin's argument that the ALJ failed to develop the record should be rejected.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Ms. Hewkin did not suffer from disability, and is not entitled to benefits under Titles II and XVI of the Social Security Act, is based upon correct legal standards, except as noted, and supported by substantial evidence. The Commissioner's decision should be AFFIRMED for the forgoing reasons.

///

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

Dated this 24 day of May, 2012.

Thomas M. Coffin
United States Magistrate Judge